IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEON FLETCHER,

        Petitioner,

    v.                        Case No. 10-3253-SAC

STATE OF KANSAS, et al.,

        Respondents.

## MEMORANDUM AND ORDER

This case comes before the Court on Petitioner's motion for a writ of habeas corpus pursuant to 28 USC § 2254. Petitioner, currently in custody at Lansing Correctional Facility, brings five claims for relief.

**Procedural History**

Following a jury trial in the District Court of Wyandotte County, Kansas, Petitioner was convicted of three counts of aggravated indecent liberties with a child. Petitioner was sentenced to a term of 153 months imprisonment, and his convictions were affirmed by the Kansas Court of Appeals. *State v. Fletcher*, No. 101,555, 2010 WL 3564679 (Kan. Ct. App., September 3, 2010) (Unpublished Opinion). The Kansas Supreme Court denied review.

Petitioner filed this claim for federal habeas corpus relief pursuant to 28 U.S.C. § 2254, making the following claims: 1) prosecutorial misconduct during closing argument in telling the jury that an acquittal would "reward" the defendant; 2) trial court error in admitting "prior bad acts" evidence; 3) trial court error in instructing the jury that another trial would be burdensome to both sides; 4) sentencing court error in using his criminal history to determine the appropriate sentence without having submitted his criminal history to a jury for proof beyond a reasonable doubt; and 5) cumulative error which denied his constitutional right to a fair trial. Respondents admit that Petitioner has exhausted his available state court remedies as to these issues.

**Underlying Facts**

The facts of the case, as determined by the Kansas Court of Appeals in Petitioner's direct appeal, are as follows:

> T.B. accused Fletcher of at least three instances of sexual contact when she was approximately 6 years old. On two occasions, the contact occurred outside her bedroom. On at least two other occasions, the contact occurred while she was in her bed. She pretended to be asleep during these incidents.
> T.B.'s brother, C.C., testified that on one occasion, Fletcher stood naked in the doorway to the room the children shared. A video of T.B.'s statement to a child-welfare counselor was presented at trial. As recorded in the video, T.B. told the counselor that Fletcher touched T.B.'s buttocks and breasts while she was in her bed pretending to be asleep.
> During closing arguments, Fletcher's attorney focused on T.B.'s credibility, drawing attention to her inconsistent versions of the abuse. Defense counsel also pointed out that T.B. was "really cute, and that's the danger in cases like this, because no one wants to look at a little girl and think that, you know, she's maybe not telling the truth or,

> more likely, maybe she's just wrong...." Counsel later expanded on this point:
>
>> "This is a horrifying charge, and it's very important that you keep the burden of proof. You know, it's the government's - State's obligation to prove to you beyond a reasonable doubt that this happened, and they're basically putting up the cute girl against my not so cute guy, and it's like, well, you know, she looked credible. You know, go ahead and find him guilty. But there is no corroborating evidence, and even if you think gosh, he might have done it, you know, she certainly hasn't proven that beyond a reasonable doubt."
>
> The State responded to these arguments this way: "There's been a lot of use of the word cute. She is cute, she's a very cute kid. So what? I'm not asking you to convict him because she's cute, I'm not asking you to convict him because of how he looks, but what I am asking you is not to give him a reward for choosing the right victim. He chose a six-year-old girl who disclosed as a six-year-old girl would. She talks about it in six-year-old girl terms."
>
> Regarding the lack of physical evidence, the prosecutor told the jury, "It would be nice if we could get DNA, or a smoking gun or whatever like they do on CSI in these kinds of cases. That's not always possible, and again, that's not something that the defense should reap a reward for." The State concluded its rebuttal argument with the following: "[T]here's no evidence of nightmares, there's no evidence that she had any other reason to say this happened, except that it actually happened. Hold the defendant accountable for his actions. Don't reward him for choosing a six year old."

*Fletcher,* 2010 WL 3564679 at *1. Absent clear and convincing evidence to the contrary, a federal habeas court must presume that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

**II. AEDPA Standard**

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. ––––,

3

130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (citation and internal quotation marks omitted). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court " 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent .' " *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams*, at 407–08. Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme

4

Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that the state court decision is "objectively unreasonable." *Williams,* 529 U.S. at 409 (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

## III. Issues

Petitioner presents five claims for review.

### A. Prosecutorial Misconduct

Petitioner first contends that his right to a fair trial was violated by the Prosecutor's misconduct in repeatedly characterizing an acquittal as a "reward." As the facts stated above reveal, the Prosecutor argued in closing argument that the jury should not "reward" the Petitioner for having chosen the right victim, for the lack of DNA or other CSI-type evidence, or for having chosen a six-year old victim. *Fletcher,* 2010 WL 3564679 at *1.

5

**The State Court Holding**

In examining this issue, the Kansas Court of Appeals applied the two-part test detailed in *State v. McReynolds,* 288 Kan. 318 (2009):

> In general, appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury follows a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, the appellate court decides whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial.

*McReynolds*, 288 Kan. at 323.

After examining the facts, the Kansas Court of Appeals held:

> Here, the prosecutor's comments were a direct response to Fletcher's appeal for sympathy. Counsel characterized Fletcher as the true victim. In response the prosecutor admonished the jury to maintain its focus on the child as the victim in this case. The State's argument presented a rational explanation for the inconsistencies in T.B.'s accusations. The prosecutor did not interject her personal opinion of T.B.'s credibility. The prosecutor's argument was squarely within the latitude of a proper closing argument.

*State v. Fletcher*, 2010 WL 3564679, 2 (Sept. 3, 2010). Accordingly, the Kansas Court of Appeals did not reach the issue whether the comments constituted plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial.

**Habeas Review**

Clearly established federal law is that a prosecutor's argument violates the Constitution in these circumstances[1] only if it constitutes a denial of due process.

> The "clearly established Federal law" relevant here is our decision in *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id.,* at 181, 106 S.Ct. 2464 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

*Parker v. Matthews*, __ U.S. __. 132 S.Ct. 2148, 2153 (2012). This determination is made after "tak[ing] notice of all the surrounding circumstances, including the strength of the state's case." *Coleman v. Brown,* 802 F.2d 1227, 1237 (10th Cir.1986).

"[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury … will [necessarily] draw that meaning." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974). Nor is it "enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden,* 477 U.S. at 181

---

[1] If, however, the challenged statements effectively deprived the defendant of a specific constitutional right, a habeas claim may be established by showing only that the violation may not be "deemed harmless beyond a reasonable doubt." *Gipson v. Jordan,* 376 F.3d 1193 (10th Cir. 2004), quoting *Mahorney v. Wallman,* 917 F.2d 469, 472, 474 (10th Cir. 1990) (quotation omitted).

(quotation omitted). Thus, "not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation." *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000). For example, the United States Supreme Court held in *Darden* that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief. *See* 477 U.S., at 180, n. 11 (prosecutor referred to the defendant as an "animal"); *id.,* at 180, n. 12 ("I wish I could see [the defendant] with no face, blown away by a shotgun."). Similarly, the Tenth Circuit held in *Banks v. Workman,* 692 F.3d 1133 (2012), that the prosecution's calling the defendant a "wild animal that stalks its prey," "a predator who lurks in the shadows," a "monster" who selects the most helpless victims, and a "Mafia style killer," did not violate the defendant's constitutional rights or warrant habeas relief, even if some comments were "highly questionable."

The fundamental-fairness standard for allegedly improper prosecution statements constitutes "a high hurdle" for the Petitioner to overcome. *Banks* 692 F.3d at 1148.

> In determining whether a trial is rendered "fundamentally unfair" in light of the conduct of a prosecutor,
>
> we examine the entire proceeding, "including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial ... as well as any cautionary steps—such as instructions to the jury—offered by the court to counteract improper remarks."

*Littlejohn v. Trammell*, __ F.3d __, 2013 WL 64372 (10th Cir. 2013), quoting *Wilson*, 536 F.3d at 1117 (quoting *Bland v. Sirmons,* 459 F.3d 999,

1024 (10th Cir. 2006). The *Darden* standard is a very general one, leaving courts much leeway in reaching outcomes in case-by-case determinations. *Parker*, 132 S.Ct. 2155, citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004).

Here, the prosecutor's statements about rewarding the Petitioner neither incited the jury nor invited the jury to base its decision on something other than the evidence. The trial court instructed the jury to base its decision only on the evidence, and not on statements of counsel, and to disregard any statements made by counsel that were not supported by the evidence. Trans. p. 259. Considering the record as a whole, the Court finds that the prosecutor's statements did not so infect the trial with unfairness as to deprive Petitioner of due process. Because the Kansas Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court jurisprudence, Petitioner is not entitled to habeas relief with respect to this claim.

**B. Admission of Evidence**

Petitioner next contends that the trial court erred in admitting testimony from the victim's brother that he once saw Petitioner standing naked in the doorway of the victim's bedroom. Petitioner contends that the prosecutor erroneously presented this evidence to make him look like a "pervert," citing *State v. Henry*, 273 Kan. 608, and *Maryland v. Craig*, 497 U.S. 836. Dk. 21, p.3. The Court broadly construes this claim to contend

that the challenged evidence was irrelevant and that its prejudicial effect outweighed its probative value.

### The State Court Holding

The trial court ruled this evidence was not of prior bad acts, found the evidence relevant to corroborating the victim's version of events, and admitted it. *Fletcher*, 2010 WL 3564679 at *3. The Kansas Court of Appeals affirmed that admission, finding no abuse of discretion:

> Relevant evidence is evidence which has a tendency in reason to prove any material fact. Evidence is relevant if there is some material or logical connection between the asserted fact and what it is intended to establish. See *State v. Gunby,* 282 Kan. 39, 47, 144 P.3d 647 (2006).
> There was no evidence that Fletcher exposed himself to the children with the intent to arouse either himself or the children. There was no evidence that Fletcher was physically aroused as he stood naked in the doorway. Nevertheless, the evidence was relevant. The State presented testimony at trial that the abuse occurred either when Fletcher entered the children's bedroom or when he entered and then took T.B. out of the bedroom. There was no physical evidence of abuse. The results of the child's medical examination were negative. The issue turned on the credibility of the various witnesses. Fletcher denied ever touching T.B. inappropriately. Therefore, evidence of Fletcher standing naked in the doorway supported T.B.'s accusations of abuse because it tended to prove that Fletcher did come to the children's room at night. The district court did not abuse its discretion in admitting this evidence.

*Fletcher*, 2010 WL 3564679 at 3.

### Habeas Review

On habeas review, this Court is not asked to determine the correctness of the court's evidentiary ruling. Instead, it reviews only the reasonableness of the appellate court's conclusion in light of relevant law established by the United States Supreme Court. "Federal habeas review is not available to

correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). "An important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence. (Citation omitted.)" *Bruton v. United States*, 391 U.S. 123, 132 n. 6 (1968).

> When the admission of evidence in a state trial is challenged on federal habeas, the question is whether the error, if any, was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.

*Williamson v. Ward,* 110 F.3d 1508, 1522–23 (10th Cir. 1997).

The same fundamental fairness test would control if the challenged evidence had been of a prior bad act. A federal habeas court reviewing a state conviction "will not disturb evidentiary findings regarding the admission of prior offenses, crimes, or bad acts evidence unless the prejudice flowing from such evidence is so great as to constitute a denial of federal constitutional rights by rendering the trial fundamentally unfair." *Smallwood v. Gibson,* 191 F.3d 1257, 1277 (1999). *See Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir.), *cert. denied,* 537 U.S. 1093 (2002). Petitioner bears the burden to show that the admission of the challenged evidence prejudiced him in such a way as to "infect[ ] the entire trial." *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).

Under federal law, evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." Fed. Rule Evid. 401. The definition of relevance used by the trial court and Kansas Court of Appeals is consistent with this definition. *See* K.S.A. 60–401(b) (deeming evidence relevant if it has "any tendency in reason to prove any material fact").

The challenged evidence corroborated the victim's statements, in part, giving her testimony more weight or credibility, and thus was relevant as the Court of Appeals found. Nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing, or the trial court to refrain from admitting, relevant evidence simply because it hurts the defendant's credibility or theory of the case. The Court finds that the Petitioner's due process rights were not violated by the admission of the challenged evidence. *See Spencer v. Texas,* 385 U.S. 554, 563–564 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial…. But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure") (citations omitted).

**C. Error in Instructing the Jury**

Petitioner next contends that the trial court erred in instructing the jury as follows:

> If you fail to reach a decision on some or all of the charges, the charge or charges are left undecided for the time being. It is then up to the state to determine whether to resubmit the undecided charge to

a different jury at a later time. Another trial would be a burden on both sides.

The trial court gave this instruction, along with the other instructions, before the jury began its deliberations, and neither party objected.

### The State Court Holding

The Kansas Court of Appeals found that the last sentence of this instruction had recently been disapproved by the Kansas Supreme Court in *State v. Salts,* 288 Kan. 263 (2009). *Salts* found it erroneous to instruct, in an *Allen*-type pattern jury instruction, that "[a]nother trial would be a burden on both sides." But including that language was not clear error because there was no real possibility that the *Salts* jury would have rendered a different verdict had the error not occurred. The Kansas Supreme Court therefore affirmed Salts' conviction of indecent liberties with a child.

Similarly, the Kansas Court of Appeals in this case found that the instruction was erroneous, but was not clearly erroneous. *Fletcher*, 2010 WL 3564679 at 3-4. The Court asked whether there was any real possibility the outcome of the trial would have been more favorable to Fletcher had the error not occurred. See *State v. Carter,* 284 Kan. 312, 324 (2007). After examining Petitioner's arguments, it concluded:

> Here, the trial was rather brief and unlikely to cause the jurors concern over the cost of a retrial. Their deliberations were rather short, making it unlikely that the jurors turned to this instruction to break a deadlock and reach a unanimous verdict. We are firmly convinced that there was no real possibility the jury would have rendered a more favorable verdict for Fletcher had the instruction not been given; and Fletcher gives us no basis to find otherwise.

*Fletcher*, 2010 WL 3564679 at 4.

**Habeas Review**

This Court's role in evaluating jury instructions on habeas review is limited—it looks only to determine if instructional errors "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense." *Shafer v. Stratton,* 906 F.2d 506, 508 (10th Cir. 1990) (quotation omitted). *See also Nichols v. Sullivan,* 867 F.2d 1250, 1253 (10th Cir.) ("the scope of our review is narrow: our responsibility is to ensure that [petitioner] was afforded the protections of due process, not to exercise supervisory powers over the [state] courts."), *cert. denied,* 490 U.S. 1112, (1989); *Gaines v. Hess,* 662 F.2d 1364, 1368 (10th Cir. 1981) (when faced with a habeas corpus petition challenging state trial proceedings, the court's review is limited to errors of constitutional magnitude.). As the Supreme Court has made clear, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle,* 502 U.S. at 71–72 (citation omitted).

The Court of Appeals reasonably found no real possibility that the jury would have rendered a more favorable verdict for Fletcher, absent the erroneous instruction. Petitioner gives this court no basis to find otherwise or to find that the giving of this instruction deprived him of due process or fundamental fairness.

### D. Court's Use of Criminal History in Sentencing

Petitioner next contends that his Sixth and Fourteenth Amendment rights were violated by the sentencing court's use of his criminal history in determining the appropriate sentence, because his criminal history had not been submitted to and determined beyond a reasonable doubt by a jury.

**The State Court Holding**

The Kansas Court of Appeals summarily addressed this claim, stating:

> Finally, Fletcher argues that the district court erred in sentencing him without submitting his criminal history to the jury for its determination. The issue has been resolved contrary to Fletcher's position in *State v. Ivory,* 273 Kan. 44, 41 P.3d 781 (2002), and we are bound to follow *Ivory.* See *State v. Tapia,* 42 Kan.App.2d 615, 623, 214P.3d 1211 (2009).

*Fletcher*, 2010 WL 3564679 at 4.

**Habeas Review**

Clearly established federal law holds: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000). This "prior conviction" exception originated in the earlier case of *Almendarez–Torres v. United States,* 523 U.S. 224, 226–27 (1998), where the Court found that a prior conviction is a sentencing factor and is not an element of a crime, and thus need not be proven beyond a reasonable doubt.

The Kansas Court of Appeals relied upon *State v. Ivory,* 273 Kan. 44, (2002). The defendant in *Ivory* contended that *Apprendi* prevented the use of prior convictions to increase a sentence beyond the statutory maximum unless proven to a jury beyond a reasonable doubt. The Kansas Supreme Court rejected that claim, thus the Kansas Court of Appeals' reliance on *Ivory's* holding is thus consistent with *Apprendi.*

The Court of Appeals' failure to mention *Apprendi* or the many subsequent United States Supreme Court cases reaffirming *Apprendi* is immaterial because complying with AEDPA does not require citation of Supreme Court cases, or even awareness of them, so long as neither the reasoning nor the result of the state-court decision contradicts them. *Early v. Packer,* 537 U.S. 3, 8 (2002). Such is the case here.

**E. Cumulative Error**

Lastly, Petitioner contends that the cumulative effect of multiple trial errors rendered his trial unfair.

### The State Court Holding

The Kansas Court of Appeals swiftly dismissed this claim, stating:

> As his final criticism of the trial, Fletcher argues that cumulative trial errors deprived him of a fair trial. We found only one trial error, the error in the jury instruction, which did not constitute reversible error. Because we find no other trial errors to accumulate, this claim necessarily fails.

*Fletcher, 2010 WL 3564679 at 4.*

### Habeas Review

The Tenth Circuit has summarized the framework for analyzing a claim of cumulative error as follows:

> In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman,* 595 F.3d 1142, 1162 (10th Cir. 2010) (internal quotation marks and brackets omitted). "[A]s the term 'cumulative' suggests, … we undertake a cumulative-error analysis only if there are at least two errors." *Hooks* [ *v. Workman,* 698 F.3d 1148] at 1194–95 (10th Cir. 2012).

*Lott v. Trammell,* ––– F.3d ––––, ––––2013 WL 142067, *54 (10th Cir. Jan. 14, 2013). The court has found no constitutional error in this matter, so there is no basis to support a claim of cumulative error, as the Kansas Court of Appeals held. This claim is without merit.

### IV. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) *Schriro,* 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

### V. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). Petitioner has not met this standard as to any issue presented, so no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 12th day of February, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge